UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Zeyad Awadallah | : | |
| | : | |
| Debtor. | : | |
| | : | Case No. 23-10415 |

# MEMORANDUM OPINION

Before the Court is the Motion of Richard Bauer to Dismiss Bankruptcy Case and for 180 day bar, in the alternative, for in rem Relief from the Automatic Stay. The Debtor filed Responses thereto and at a hearing on the matters the parties were instructed to submit briefs. For the reasons which follow, the Motion to Dismiss will be granted which is dispositive of all pending matters in the case. In re Dille Fam. Tr., 598 B.R. 179, 203 (Bankr.W.D.Pa. 2019) (holding that dismissal of this case moots all pending motions, objections, or related matters).

*Motion to Dismiss*

Dismissal is provided for in §1307 of the Bankruptcy Code: "the court may convert … or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for *cause* …" 11 U.S.C. §1307(c) (emphasis added). The Third Circuit has specifically held that a lack of good faith in filing a case is sufficient cause for dismissal. See In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996). As grounds for dismissal, Bauer maintains that the bankruptcy is neither feasible nor was it filed in good faith. Mot. ¶11. "A creditor who challenges the debtor's filing bears the initial burden to put the debtor's good faith into dispute ... The burden of persuasion then shifts to the debtor, who must offer evidence showing that the bankruptcy process is not being misused." In re Legree, 285 B.R. 615, 618 (Bankr. E.D. Pa.2003).

1

As evidence of bad faith, Bauer points to the Debtor's prepetition conduct. On November 22, 2019, the Debtor's real estate was sold at a tax sale. See Deed attached to Mot., Ex. A. Mr. Bauer, the movant herein, was the purchaser. Id. On December 5, 2019, the Debtor filed a Petition/Motion to Set Aside the Sale and, in the alternative, for Redemption under 53 P.S. §7293 (the "Petition") in state court. Id. Ex. B. While that matter was pending in state court, the Debtor filed a Chapter 13 bankruptcy case (No. 20-13787) on September 20, 2020. His Chapter 13 Plan proposed to redeem the debt on the property by paying approximately $65,000 to three (3) tax claimants. Although the Debtor obtained confirmation of the Plan, the 2020 case was dismissed for failure to make plan payments on December 2, 2021. He fared no better in the state court where, on November 7, 2022, his petition was denied. See Mot. Ex. C. On December 6, 2022, the Sheriff deeded the property to Bauer. See Mot. Ex. C. The Debtor, however, remained in the property. Bauer was then forced to file a Complaint in Ejectment to evict the Debtor from the premises. Mot., Ex. D. In response, the Debtor commenced the pending bankruptcy proceeding. Once again, the Debtor asserts a right to redeem the property, despite the pre-petition ruling of the state court and the dismissal of his prior bankruptcy case.

**Timing of the Right to Redeem**

Debtor begins by arguing that he is not precluded from redeeming the property because the state court's denial of the petition to redeem was premature. He relies here on the redemption provisions of the Municipal Claims and Tax Liens Act:

> The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale;

53 P.S. §7293(a).

Debtor reads this provision to mean that the nine (9) month period within which he may redeem does not commence until *after* the Sheriff conveys the property to the purchaser. Because the deed was not conveyed to Bauer until December 6, 2022, the Debtor argues that he has nine (9) months from *that date* to redeem. Any efforts to redeem prior to that time – be it by a direct petition to state court or in a Chapter 13 plan – are of no legal effect because the state court lacked jurisdiction to hear any such request. Dr.'s Br. 3, ¶4, (3rd paragraph down).

Bauer disputes this premise and relies on Pennsylvania case law to the contrary, specifically City of Philadelphia v. F.A.Realty Inv.Corp., 95 A.3d 377, 384-86 (Pa. Commw. Ct. 2014). There, a prior owner of real estate sold at a tax sale petitioned to redeem the property before the deed had been acknowledged. Id. at 379. The trial court denied the petition as premature. Id. On appeal, the Commonwealth Court concluded that a landowner may petition to redeem even before the deed is acknowledged:

> Hence, in construing the language in a manner consistent with the legislative intent, and in order to avoid an absurd result, "at any time within nine months from the date of the acknowledgement of the sheriff's deed," 53 P.S. §7293(a), means Appellants would have a right to redeem the Property any time prior to nine months after the date that the sheriff's deed is acknowledged. In other words, Appellants would not have to wait until *after* the sheriff's deed has been acknowledged to file a petition to redeem the Property. An owner of a property sold under a tax or municipal claim could redeem the Property at *any time* so long as the petition for redemption is filed within nine months after the acknowledgment of the sheriff's deed. This interpretation reflects the Legislature's intent to establish an end date for a property owner's right to redemption. If the legislature had intended to establish a beginning date, it would have provided that property could be redeemed at any time *after* the sheriff's deed has been acknowledged and not state that property could be redeemed "at any time within nine months *from* the date of the acknowledgment of the sheriff's deed." 53 P.S.§ 7293(a) (emphasis added).

City of Philadelphia, 95 A.3d at 386-87.

Debtor has cited no competing authority in this jurisdiction with respect to the interpretation of the Municipal Claims and Tax Liens Act. Moreover, from a policy perspective, it is difficult to see what purpose would be served by delaying the time period for redemption as

3

the Debtor has suggested.[1]  Accordingly, I will adopt the Commonwealth Court's interpretation of the statute and find that the Debtor's earlier attempts to redeem which occurred prior to the acknowledgment of the Sheriff's deed were proper.  In addition, I find that the state court did **not** lack jurisdiction to hear the Debtor's prior petition to redeem and to enter the order denying said petition.

*Redemption Through Chapter 13 Process*

As the record reflects, the Debtor's options for paying the redemption price were not limited to a lump sum tender.  A Chapter 13 debtor may likewise redeem through a Chapter 13 Plan.  See e.g., In re Wilson, 563 B.R. 519, 525 (Bankr.E.D. Pa. 2016) (recognizing that a Chapter 13 debtor may redeem property sold at Sheriff's sale through its plan by beginning the redemption process prior to the expiration of the nine-month redemption period set forth in §7293 of the Municipal Claims and Tax Liens Act.); In re Pittman, 549 B.R. 614, 625 (Bankr.E.D.Pa. 2016) (explaining that the debtor may pay the redemption amount to the purchaser over time as a secured claim under the plan pursuant to §1322(b)(2)).  Debtor's 2020 Chapter 13 Plan proposed to redeem the property by paying the three (3) tax claimants over 60 months.  Here, again, Debtor seeks to redeem the property via the Chapter 13 plan process:  His

---

[1] Debtor's last challenge to Bauer's Motion involves language in the deed itself.  He identifies what he believes to be a defect therein:   the deed states that it was issued as part of a writ of mortgage foreclosure. Dr.'s Br. 3-4.  Presumably, because the Debtor does not explain exactly how this is defective, the deed should state that it is issued as part of a tax sale.

Whatever Debtor's reasoning is, the argument is a non-starter.  As between parties, a deed is valid and binding if it is duly executed and delivered.  Abraham v. Mihalich, 479 A.2d 601, 603 (Pa. Super. Ct. 1984) citing Maguire v. Preferred Realty Co., 101 A/ 100. 101 (Pa. 1917).  This deed does that.  There is no dispute as to the parties,  the Sheriff and Bauer.  Neither is the description of the land at issue nor the purchase price.  Whether the deed incorrectly states the legal proceeding which resulted in the transfer does not render it invalid; nor does Debtor cite any authority in his brief to support such a contention.  Moreover, the Debtor does not have standing to challenge the deed. His argument that the automatic stay in his bankruptcy precludes the parties from correcting the deed under the applicable rule of procedures (Dr.'s Br. 4) is incorrect.  The transfer occurred prepetition and after the state court ruled that he could not redeem the property.  Therefore, the property is NOT property of the bankruptcy estate.  As a result, the automatic stay does not impact any action with respect to the deed.  Furthermore, Debtor's lack of a property interest in the former home deprives him of standing to challenge the transfer of the property from the Sheriff to Bauer.

4

Schedule A/B continues to assert that he owns the property, and his plan proposes to pay Bauer an amount equal to the redemption price over 60 months.[2]  See Sched. A/B and Chapter 13 Plan.

***Rooker-Feldman***

The critical difference between Debtor's 2020 Chapter 13 case and the instant case is the prepetition denial of Debtor's redemption petition by the state court.  If I were to allow redemption in this Chapter 13 case, I would effectively be overruling the state court's denial of the prior redemption request.  The state court ruling on that matter was a final decision.  Under what is known as the Rooker–Feldman doctrine, a lower federal court may not review a judgment entered by a state court.  In re Blythe, 445 B.R. 405, 413 (Bankr. E.D. Pa. 2009) (citing Rooker v. Fid. Trust Co., 263 U.S. 413, 416 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983).  As the Third Circuit has explained:

> [t]he *Rooker–Feldman* doctrine arises from 28 U.S.C. § 1257 which states in relevant part that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court." Since Congress has never conferred a similar power of review of the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions.... [T]he *Rooker–Feldman* doctrine prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling. Although § 1257 refers to orders and decrees of the highest state court, the *Rooker–Feldman* doctrine has been applied to final decisions of lower state courts.  Thus, a claim is barred by *Rooker–Feldman* under two circumstances; first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.  In either case, *Rooker–Feldman* bars a litigant's federal claims and divests the District Court of subject matter jurisdiction over those claims.  *Walker v. Horn,* 385 F.3d 321, 329 (3d Cir.2004). (citations, internal quotations and brackets omitted).

In re Knapper, 407 F.3d 573, 580–81 (3d Cir. 2005)

---

[2] 60 monthly payments of $1500.

*Right to Redeem was Actually Litigated*

The record reflects that on November 7, 2022, the state court held a hearing on the Debtor's petition to set aside the sale of the property and to redeem the property. In its ruling, the Court noted that the Debtor abandoned the request to set aside the sale but continued to press the redemption demand. The Court denied the petition to redeem, specifically finding that the Debtor had failed to meet its burden of proof as required under the applicable statute.[3] See Mot. Ex. C, n.1. The issue of the Debtor's right to redeem, then, was already tried.

*Plan is Inextricably Entwined With Denial of Redemption*

Yet it is that purported right to redeem which is the operative premise of this bankruptcy. The plan proposes to treat the claim of Bauer—the sole[4] creditor in the schedules—by paying him the redemption amount *as if such right existed*. If I were to confirm such a plan and thereby permit Debtor to do just that, then it would be reversing the state court *denial* of the petition to redeem. Principles of federalism preclude that.

Accordingly, if the state court's ruling denying the right to redeem is inviolate and the sole purpose of this bankruptcy case is to redeem the property, there is no point to this case proceeding any further. Futility is sufficient grounds for finding "cause" to dismiss a case under Code §1307(c). See In re Jiminez, 2021 WL 3286341, at *6 (9th Cir. BAP) (holding that because debtor was unable to keep real estate, futility of his case constituted cause for dismissal under section 1307(c)); see also In re Merhi, 518 B.R. 705, 715 (Bankr.E.D.N.Y. 2014 (dismissing case because plan payments were based on recovery from claims already rejected by state court and therefore barred from reconsideration under Rooker-Feldman); Matter of Lisse, 921 F.3d 629,

---

[3] This was not a default judgment; rather, it was a hearing on the merits. Again, the Debtor concedes that he was represented by counsel and afforded the opportunity to be heard but chose not to appear and did not offer evidence at the hearing. Dr.'s Br. 2.
[4] There is another creditor in the claims register; however, it is a minuscule tax claim.

6

640 (7th Cir. 2019) (affirming dismissal of Chapter 13 case which was filed to collaterally attack state court conclusion that mortgage note was *n*ot forged and that mortgagee *did* have standing to foreclose as contravening Rooker-Feldman). Similarly, allowing this case to go forward serves no bankruptcy purpose. Accordingly, it will be dismissed.

*Bar Order*

Typically, dismissal of a bankruptcy case is without prejudice: "dismissal of a case under this title does not prejudice the debtor with regard to the filing of a subsequent petition under this title…" 11 U.S.C. §349(a). Bauer, however, asks the Court for more: the Order dismissing the case should also bar the Debtor from filing another bankruptcy for the next 180 days. Mot. ¶12. The basis for this request, says Bauer, is the Debtor's bad faith conduct. Bauer Br. 12. Debtor did not respond to this request.

Such relief is within the bankruptcy court's general, statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. §105(a). "Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief." In re Casse, 198 F.3d 327, 336 (2d Cir. 1999) (citation omitted). This includes the power to control abusive litigation. Law v. Siegel, 571 U.S. 415, 420 (2014); Marrama v. Citizens Bank of Mass., 549 U.S. 365, 375–376 (2007). More specifically, some courts rely on Bankruptcy Rule 9011 when dismissing a case with a bar to refiling:

> **(b) Representations to the court**
>
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,[1]--
>
> **(1)** it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

7

Fed. R. Bankr. P. 9011(b)(1).  See In re Dami, 172 B.R. 6, 11 (Bankr.E.D.Pa.1994) (finding as abusive filing a petition which has neither an intention of obtaining the benefits or goals of the bankruptcy code nor of concluding such a proceeding as a violation of B.R. 9011); In re Dawson, 2007 WL 4190772, at *2 (Bankr. E.D. Pa. Nov. 20, 2007) (relying on Bankruptcy Rule 9011, incorporating Fed.R.Civ.P. 11 as authority for a bar on future filings to "break the cycle of bankruptcy recidivism").  Other courts look to the express language of §349.  There, the subordinate clause of subsection (a) qualifies the debtor's right to refile after dismissal: "[u]nless the court, for cause, orders otherwise ... " 11 U.S.C. §349(a); see also In re Iredia, 556 B.R. 691, 700 (Bankr.E.D.Pa. 2016)(relying on §349(a) to dismiss case for bad faith with two-year bar from refiling); In re Lee, 2007 WL 1650577, at *2 (Bankr.E.D.Pa. June 5, 2007) citing In re Casse, 198 F.3d at 339 (relying on §349(a) to dismiss bad faith filing with a limitation on refiling).  Whichever legal basis is relied upon, the Third Circuit explains that any such limitation on the right to refile be supported by an evidentiary record and a legitimate rationale. In re Ross, 858 F.3d 779, 787 (3d Cir. 2017).

The same proofs and reasoning which supported dismissal per se likewise furnish the basis for dismissal with prejudice.  On the surface, the record appears relatively sparse: the Debtor has filed but *two* bankruptcy cases.  Yet even while two cases would not comprise *serial* or *multiple* filings, there is a glaring fact common to both cases: in each his schedules list but one creditor.  In the prior case, it was the City of Allentown, a tax claimant; in the present case it is Mr. Bauer.  And in both cases, the basis of their respective claims was the real property which was sold at a tax sale[5] and which was purchased by Bauer at that sale.[6]  That is all that there is to

---

[5] The claims register reflects that the Debtor was not paying any real estate taxes.  The four claims constitute unpaid state, county, local, and school taxes.

[6] Presumably, if Bauer was the successful bidder at the tax sale, then he must have paid off the unpaid taxes mentioned in the previous footnote.  This would explain why he is the sole creditor listed in the schedules for

both cases. So it is obvious what the Debtor's intentions have been all along: to keep the property despite his having no apparent legal or factual ownership interest in it.

The facts of this case bear a striking similarity to another case from this District where a second case was dismissed with a six-month bar to refiling: In re Jacono, 360 B.R. 84 (Bankr.E.D.Pa. 2006). There, the debtor's first filing sought to retain real estate from foreclosure. Id. at 87. The lender obtained relief from stay to resume foreclose and the bankruptcy was dismissed. Id. at 85. In the foreclosure proceeding, the court expressly found that the debtor was "forever barred and foreclosed of all rights, claims, liens and equity of redemption in the mortgaged premises." Id. (quoting United States v. Jacono, 2006 WL 560142, at *7 (E.D. Pa. Mar. 3, 2006), aff'd, 244 F. App'x 416 (3d Cir. 2007). Notwithstanding, the debtor filed another bankruptcy case. The plan in that case proposed to pay the lender all that it was owed on its mortgage claim, despite the District Court's finding that the Debtor had no interest to redeem. Id. at 87. The lender moved to dismiss the case with a 180-day bar to refiling. Id. at 86. The Court granted the dismissal and the restriction on refiling:

> While this case does not have the indicia of bad faith present in some other cases where the repeat filings have been more numerous before the creditor seeks to stop the bankruptcy cycle, it nonetheless evidences a determination by this Debtor to reside under the protection of the bankruptcy stay until every hope of raising funds to pay HUD has been dashed. If HUD's secured position was not eroding during the stay, more time might be an appropriate balance of the parties' respective interests. However, Debtor continues to reside in the Property without payment to HUD or the taxing authorities after the District Court has held *that he has no interest to protect*. Notably the bar order I will enter will allow Debtor to make application to this Court to refile should there be a change in circumstances that would suggest a reorganization is feasible. This relief merely shifts the burden to Debtor to earn his injunction, obviating the opportunity to halt the foreclosure again by simply filing another petition.

---

Debtor's second case. As to the claims register in the present case, the only other creditor is yet another tax claimant, this time the Pennsylvania Department of Revenue for a miniscule amount (less than $300)

9

In re Jacono, 360 B.R. at 88-89 (emphasis added). Like the debtor in Jacono, this Debtor has no interest in the real estate which he seeks to retain using the bankruptcy process. For that reason, not only is dismissal of his case warranted, but so is a limited restriction on his right to refile. Fairness would afford Bauer a reasonable interval to resume the eviction proceeding which was halted by this bankruptcy filing.

*Summary*

The case will be dismissed, and the Debtor will be barred from refiling for a period of 180 days. However, Bauer's request for "in rem" relief under §362(d)(4) is denied without prejudice. Section 362(d)(4) permits a court to enter an order terminating the bankruptcy stay in future cases for two years where such relief is requested by a creditor whose claim is secured by real estate and who can prove that a debtor's "multiple filings" were part of a "scheme" to frustrate foreclosure. 11 U.S.C. §362(d)(4). This is only the Debtor's second bankruptcy case and for that reason there is not a sufficient basis upon which to make such a finding.

An appropriate Order follows.

**Date:** July 19, 2023

*[signature: Patricia M. Mayer]*

**PATRICIA M. MAYER**
**U.S. BANKRUPTCY JUDGE**